UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRIEDRICH & FRIEDRICH, LLC
203 Godwin Avenue
Ridgewood, New Jersey 07450
(201) 670-9600 – tel
(201) 670-9650 – fax

5 Plume Grass Way
Westhampton, New York 11977
(631) 961-6466 – tel
Attorney for Plaintiff
David B. Friedrich (DF1522)

---

STEVEN MADDEN, LTD.,

        Plaintiff,

v.

VESTAL GROUP, INC.,
A Delaware Corporation, VESTAL WATCH
INC., A Delaware Corporation, SM
TIMING, LLC, IRA ROBB, Individually and
as Corporate Officer, JOHN GEHRIS,
Individually and as Corporate Officer and
JOHN AND JANE DOE 1-10 and
ABC Corp. 1-10,

        Defendants.

Civil Action No.:

09-CIV-5664

**COMPLAINT**

Plaintiff, Steven Madden, Ltd., with its principal place of business at 52-16 Barnett Avenue Long Island City Queens, New York by way of Complaint against the Defendants says:

## JURISDICTION & VENUE

1. This Court has jurisdiction pursuant to Sections 34(a) and 39 of the Lanham Act 15 U.S.C. § 1116(a) and 1121; and 28 U.S.C. § 1331, 1332(a), 1333(a), and 1367(a) the amount in controversy exceeds $75,000.00 exclusive of interest and costs.
2. Venue is proper in the district pursuant to 28 U.S.C. § 1391.
3. This Court has personal jurisdiction over all Defendant parties by virtue pursuant to licensing agreement of June 21, 2006 in which all parties consent that any legal action or proceeding with respect to this agreement shall be brought to the Courts of the State of New York or the United States of America in New York County in the City of New York, and, by execution and delivery of this agreement, each party hereby accepts for itself in respect to its property, generally and unconditionally, the exclusive jurisdiction of the aforesaid Courts therefore venue is proper in this district.

## STATEMENT OF FACTS

4. Plaintiff, Steven Madden, Ltd., (hereinafter "Madden") is a corporation formed under the laws of the State of Delaware with its principal place of business in the County of New York, State of New York.
5. Upon information and belief that all times herein mentioned, Defendant The Vestal Group, Inc., a Delaware Corporation, was, and now is, a corporation duly organized and existing under the laws of the State of Delaware, having its principle place of business at 10 Bank Street, White Plains, NY 10606.

6. Upon information and belief that all times herein mentioned Defendant, Vestal Watch, Inc., a Delaware Corporation, was and now is a corporation duly organized and existing under the laws of the State of Delaware having its principal place of business at 10 Bank Street, White Plains, NY County of Westchester, State of New York.

7. Upon information and belief that all times herein mentioned that Defendant, SM Timing LLC., a Delaware limited liability company was and is now a corporation duly organized and existing under the laws of the State of Delaware having its principal place of business at 10 Bank Street, White Plains, NY County of Westchester, State of New York.

8. Upon information and belief that all times herein mentioned that Defendant, Ira Robb both individually and as an officer, shareholder and member of the above referenced entities with his residence in the State of California.

9. Upon information and belief that all times herein mentioned that Defendant, John Gehris both individually was an officer, shareholder and member of the above referenced entities with his residence in the State California and his place of business being 730 W. 17th Street, Costa Mesa, California.

10. At all times herein mentioned Defendants and each of them, were agents, servants, representatives, joint ventures, partners, officers, members, alter egos and/or employees of their co-Defendants and doing the things herein after alleged, or acting in the course and scope of the authorities of the agents, servants, representatives, joint ventures, partners, officers, members, alter egos and/or employees with the permission and consent of their co-Defendants, and each co-Defendant having ratified the acts of the other co-Defendants.

11. The entities are intertwined to the point that the entities share the same marks on all advertising, letterhead, naming and marks on checks, addresses and phone numbers and officers.

12. Defendants Vestal Group, Inc., Vestal Watch, Inc. and SM Timing (hereinafter known as "Vestal Entities") Ira Robb and Johnny Gahris at all times herein mentioned was the alter ego of Defendant, Vestal Entities and their exists, and at all times herein mentioned has existed a unity of interest and ownership between these Defendants such that any separateness between them has ceased to exist. Defendants are completely controlled, dominated, managed, and operated in intermingled assets to suit the convenience of their officers.

13. Wherever appeared in this complaint each and every reference to the Defendants or to any of them, is intended to be and shall be referenced to all Defendants herein and to each of them named and unnamed, including all petition named Defendants, unless it references or otherwise specifically qualified.

14. Madden itself and through its agents, subsidiaries and licensees is engaged in the manufacturer, distribution and sale in Interstate Commerce of high quality merchandise, including footwear and other apparel and fashionable accessories.

15. Since the entities' inception Madden's merchandise has been widely advertised, offered for sale and sold throughout the United States under various trademarks, including Steven Madden mark and all Steven Madden trademarks have at all times been owned exclusively by Steven Madden, Ltd.

16. Due to Madden's exclusive and extensive use of the Steven Madden and other Steven Madden brand trademarks, these marks have acquired enormous value and recognition in the United States and throughout the world. The Madden trademarks are well known to the consumer public and trade as identifying and distinguishing

Madden exclusively and uniquely as a source of origin of the high quality products to which the Madden trademarks are applied. The Madden trademarks are both distinctive and famous.

17. The Madden trademarks are registered with the principal registrar of the United States Patent and Trademark office.

18. From time to time Madden enters into licensing agreements with other entities in which to sell, manufacturer and distribute products using the Steven Madden or other Madden entity trademark names in order to diversify their name and to offer products to their customers which are in line with fashion and fashion apparel and other luxury items to meet their customer needs.

19. As such, Madden wishing to diversify its products line entered into negotiations with SM Timing, LLC, an alter ego of Vestal Group and Vestal Watch, Inc. to license the Steven Madden, Steven by Steven Madden and Steven Madden Luxe trademarks to manufacture, sell, distribution and promotion of quality watches.

20. On or about June 21, 2006 a licensing agreement was entered between Steven Madden, Ltd. and SM Timing, LLC, a wholly owned entity by the Vestal Group, Inc. an alter ego of Vestal Watch, Inc.

21. There soon came a time in which Defendants, SM Timing, Vestal Group and Vestal Watch did not live up to the terms and conditions of the licensing agreement. It was upon information and belief as stated by the above mentioned entities that they did not have the liquidity in which to pay the manufacturer of the watches in China or to receive the goods to place them into the stream of commerce.

22. Per the licensing agreement, Guaranteed Minimum Royalties were due from January 31, 2007 which in fact none were paid and pursuant to the licensing agreement, the Defendant entities were placed on notice that if the default was not cured within ten (10) days the licensing agreement would be terminated.

23. Subsequently the Minimum Royalties fees were in fact not made and on October 1, 2007 the Defendants were placed on notice that the rights to them under said licensing agreement were terminated due to Defendant entities' default.

24. Soon thereafter on or about November 6, 2007 a Complaint was filed in the Federal Court in the Southern District of New York under Civil Case No. 07-civ-9838 which was before Judge Peter K. Leisure, Senior U.S. District Judge.

25. Said venue in the Southern District Court of New York was in fact a jurisdiction pursuant to the licensing agreement which selected the State of New York as governing law and jurisdiction of any claims pursuant to the licensing agreement.

26. On or about December 14, 2007, the above-referenced matter was deemed settled pursuant to a termination of licensing agreement. Pursuant to said licensing termination agreement which was entered in the above-referenced court set forth that Defendant entities "shall not sell any product with the trademarks or any variation thereof pursuant to the licensing agreement at any time to any party and that there will be no disposal of any licensed product without the approval of Madden in writing."

27. Said license termination agreement was executed by officer and upon information belief majority shareholder Ira Robb. During said settlement agreement in the above entitled action which led to the settlement agreement and termination of license agreement it was requested by Ira Robb and Johnny Gehris that they be permitted to sell through Vestal Watch, Inc. alter ego of Vestal Watch Group to sell all watches which were manufactured in China once the entities and individuals had liquidity in which to purchase the products from the manufacturer. This request was rejected by Madden and in fact the termination agreement rejected same.

28. However, it was not the intent of either of the Vestal Entities to abide by the termination of license agreement as at all times prior to and during the execution of the agreement it was the Vestal Entities fraudulent intent to still sell wholesale and/or distribute all manufactured watches at the time of the termination to wholesalers and alike in complete breach of the termination of license agreement.

29. Based on the fraudulent actions individually and collectively by the Vestal Entities, Ira Robb and Johnny Gehris executed the termination agreement with fraudulent intent as at all times prior to and at the signing of the agreement intended to still sell all manufactured watches at the warehouses in China even though said termination of license agreement revoked that right and Madden stated during the negotiations of said termination that no sales would be permitted.

30. At all times Madden was unaware of the above mentioned parties intentions and was under the belief that the Defendants would abiding by the termination of license agreement.

31. It was not until Madden on or about October 1, 2008 received its first complaint from a customer who purchased a Steven Madden branded watch which Madden did not produce, sell or manufacturer or license same.

32. Through due diligence it was discovered that in fact the watches were sold to numerous wholesales contrary to the license termination agreement.

33. It was discovered that the Defendants individually and collectively were marketing, distributing and manufacturing Steven Madden branded watches with Madden warranties but were sending invoices to wholesalers using the Steven Madden, Ltd. mark on top of its forms without permission or right to use said mark.

34. Wholesalers who purchased the watches made the checks payable to Vestal Watch Group, parent company of Defendants Vestal Group and SM Timing.

35. Vestal Entities with the consent and knowledge of individual officers for their own financial gain flood the market with unlicensed watches to numerous small, medium and large sized wholesalers and retailers making it near impossible for Madden to protect its marks which has created great loss as to time and expense to protect same and diminishing the value of Madden's mark.

## COUNT ONE
### (BREACH OF SETTLEMENT AGREEMENT)

36. Plaintiff repeats the allegations contained in paragraphs 1 through 34 as if more fully set forth herein.

37. On or about December 23, 2008, the Honorable Peter K. Leisure, U.S.D.J. entered a Notice of Dismissal subject to the parties complying with the Stipulation of Settlement.

38. The Termination of License Agreement states in pertinent part "SMT shall not sell any product with the trademarks or any variation thereof (the "licensed product") at any time to any party. There should be no disposal of any licensed product without the approval of Madden in writing."

39. On or about October 2, 2008, Plaintiff Madden received a phone call from a consumer stating that they purchased a defective watch from a retail store.

40. After several months of due diligence it was discovered that Defendant entities at sometime in the summer of 2008 approximately six to seven months after entering into the settlement agreement placed on the open market a manufactured Steven Madden branded watches. Contrary the settlement agreement/termination license agreement which Vestal Entities

entered into. It was also discovered these watches were sold to numerous wholesalers and retailers for distribution across the United States of America and Canada.

41. Johnny Gehris, the chief officer of all Defendant entities acknowledged the sale of all watches manufactured in China were marked under the trademark name of Steven Madden without the license and rights to do so. Mr. Gehris said that the sales were so the Defendants could pay the Chinese manufacturer as well as pay the personal debts and liabilities of Ira Robb.

42. Vestal Entities have breached the termination of licensing agreement by their actions and are further in violation of the Judge's executed Order, Notice of Dismissal which incorporated the termination agreement.

**WHEREFORE**, Plaintiff demands judgment against Defendants Vestal Group, Inc., Vestal Watch, Inc., SM Timing LLC, and Vestal International, Inc. awarding the full contract of the original license agreement, damage for violation of its mark as selling unlicensed goods and awarding compensatory and punitive damages with legal fees, interests and costs of suit.

### COUNT TWO
### (FRAUD AS TO VESTAL ENTITIES)

43. Plaintiff repeats the allegations contained in paragraphs 1 through 41 as if more fully set forth herein.

44. On or about December 14, 2007, Plaintiff and Defendants entered into a termination license agreement which was incorporated by reference with the order filed by the Honorable Peter K. Leisure, U.S.D.J.

45. At that time Defendants made the representations by executing commercial license agreement, that Defendants would not dispose of any licensed product or sell any product with the Steven Madden trademark.

46. Defendants made these representations to induce Plaintiff to settle the aforementioned litigation.

47. During negotiation process Defendants requested that it be allowed to sell all previously manufactured Steve Madden watches which were at the time being held by the Chinese manufacturer. This request was rejected by Plaintiff and wording of the agreement prohibiting said sales in the License Termination Agreement.

48. At the time Defendants made representations that the watches would not be sold and executed said agreements at that time that it had no intention to comply with the agreement as it always intended to sell the now unlicensed watches at the same time it made the representations to Plaintiff that it would not sell the watches.

49. Plaintiff relied that the representations to be true, and based on reliance that it was induced to execute the agreement, terminating the then litigation and taking considerably less in compensation which Plaintiff was entitled to under the licensing agreement.

**WHEREFORE**, Plaintiff demands judgment against the Defendants Vestal Group, Inc., Vestal Watch, Inc., SM Timing, LLC and Vestal International, Inc. for compensatory and punitive damages, legal fees and costs of suit.

## COUNT THREE
### (FRAUD COUNT AS TO INDIVIDUAL DEFENDANT PARTIES)

50. Plaintiff repeats the allegations contained in paragraphs 1 through 48 as if more fully set forth at length herein.

51. Upon information and belief Johnny Gehris and Ira Robb, shareholders and officers of all Defendant entities entered into negotiations with Plaintiff to terminate the license agreement. Defendant entities' representations to Plaintiff were that it entered into discussions to settle all disputes in good faith. The representations which were made and set forth in writing were in

fact never to be complied with by said Defendants. Even though executing the agreement to the contrary it was always these individuals intent to sell any and all watches with the Steve Madden mark which were already manufactured in China with the specific intent to defraud Plaintiff.

52. In an attempt to make itself judgment proof, on information and belief, terminated the use of the entities known as SM Timing and Vestal Group, Inc., signators to the license agreement as well as signators on the termination of license agreement, using the entity known as Vestal Watch to conduct all sales of the unlicensed and counterfeit watches.

53. Upon information and belief the proceeds from the sales of the unlicensed watches were used to clear the debts of the individual Ira Robb as well as the debts of the companies that being all Vestal Entities.

54. Both individuals Mr. Gehris and Ira Robb fraudulently induced Plaintiff Steven Madden to enter into its agreements even though the individuals never intended to comply with its obligations in order to protect and shelter itself from judgments and in furtherance of its fraudulent acts stopped using the entities which executed the agreement and instead used an entity to salvage the watches in order to fraudulently circumvent the agreement which it negotiated and which Ira Robb executed all to their own financial benefit.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory and punitive damages, legal fees with interests and costs of suit.

## COUNT FOUR
### (CONSPIRACY AS TO ALL DEFENDANT PARTIES)

55. Plaintiff repeats the allegations contained in paragraphs 1 through 53 as if more fully set forth herein.

56. Upon information and belief Defendant entities conspired to defraud and deprive Plaintiff of value of its settlement and termination of license agreement by transferring the watches from the entities which entered into the original license agreement and termination agreement that being SM Timing and Vestal Group and transferring the watches to Vestal Watch Group the surviving entity to liquidate the watches.

57. When Defendant entities conspired to defraud Plaintiff, it understood that their wrongful conduct would cause Plaintiff to suffer irreparable harm and damages.

58. Plaintiff suffered harm and damages as a result of Vestal Entities and individual officers participation in the above alleged conspiracy. These damages included damage to the value of Steven Madden's name and mark, entering into a settlement agreement in which Plaintiff suffered substantially less in order to settle the matter and terminate the license agreement rather than to enforce the original license agreement, attorneys' fees and other time and effort expended investigate and trace the sale of the unlicensed goods.

**WHEREFORE**, Plaintiff demands judgment against Defendant entities jointly and severally for compensatory, consequential and punitive damages, legal fees and other professional fees expended in discovering the nature of the fraud and to enforce monies due and owing pursuant to the original license agreement and minimum net royalty fees due under said agreement.

### COUNT FIVE
### (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AS TO VESTAL ENTITIES)

59. Plaintiff repeats the allegations contained in paragraphs 1 through 56 as if more fully set forth herein.

60. The termination of the license agreement which was made part of a settlement of a Federal Court action between the Plaintiff and

Vestal Entities, Defendants owed a duty of good faith and fair dealing to Plaintiff. The duty includes the duty to deal honestly in fact with Plaintiff.

61. On numerous occasions from the onset of the contract until this litigation Defendants breached their duty of its duty to deal honestly in fact with Plaintiff by wrongfully refusing to affirmatively act pursuant to its obligations of its executed agreements between the parties and by engaging in deceptive fraudulent conduct, transfer of unlicensed goods to unsuspecting retailers.

62. Plaintiff suffered harm and damages as a result of Defendants' breach of their duty of good faith and fair dealing.

**WHEREFORE**, Plaintiff demands judgment against Defendant entities jointly and severally for compensatory, consequential and punitive damages, legal fees and other professional fees expended in discovering the nature of the fraud and to enforce monies due and owing pursuant to the original license agreement and minimum net royalty fees due under said agreement.

### COUNT SIX

### (LANHAM ACT FEDERAL TRADEMARK INFRINGEMENT 15 U.S.C. § 1114 AGAINST DEFENDANT VESTAL ENTITIES)

63. Plaintiff repeats the allegations contained in paragraphs 1 through 61 as if more fully set forth herein.

64. Plaintiff's registration of the Steven Madden mark is incontestable and its mark is distinctive and/or has acquired secondary meaning designating Plaintiff as a source of all goods and/or services advertised, marked, sold or used in connection with this mark.

65. Defendant entities use of the Steven Madden name and other such marks as described above, is likely to cause confusion, mistake or to deceive as to source, origin, affiliation, or sponsorship between Plaintiff and Defendants.

66. Unless an injunction is issued and enjoining and continuing for future use of the Steven Madden marks by Defendants, including use in connection with the names stated above, such use is likely to continue to cause confusion, mistake or to deceive as to source, origin, affiliation, or sponsorship and thereby irreparably damage Plaintiff.

67. As a direct and proximate result of Defendants' in fringing use, Plaintiff has been damaged and will continue to be damaged. Pursuant to 15 U.S.C. § 1116(a) and 1125(c) Plaintiff is entitled to an Order in joining Defendants from using the mark in any manner with any confusingly similar variation thereof in connection with any watches. Pursuant to 15 U.S.C. § 1125(c)(2) and 117(a), Plaintiff is entitled to an Order requiring Defendants to account to Plaintiff any and all profits derived by Defendants from its actions; and pursuant to 15 U.S.C. § 1125(c)(2) and 117(a), Plaintiff is entitled to an Order awarding all damages sustained by Plaintiff by reason of the infringement caused by Defendants.

68. Defendant entities conducted alleged herein was intentional, without foundation or law, any conscious disregard of Plaintiff's rights. Pursuant to 15 U.S.C. § 117(a) Plaintiff is entitled to an award of treble damages against Defendants.

69. Defendants' acts make this an exceptional case under 15 U.S.C. § 117(a) and Plaintiff is entitled to an award of attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant entities jointly and severally for compensatory, consequential, treble and punitive damages, legal fees and other professional fees expended in discovering the nature of the fraud and to enforce monies due and owing pursuant to the original license agreement and minimum net royalty fees due under said agreement.

## COUNT SEVEN
### (FALSE DESIGNATION OF ORIGIN)

70. Plaintiff repeats the allegations contained in paragraphs 1 through 68 as if more fully set forth herein.

71. The aforementioned acts of Defendants constitute the use of false designation of origin and/or the making of false or misleading representations of fact and violation of 15 U.S.C. 1125(a). Such conduct has caused and will continue to cause irreparable injury to Steven Madden.

**WHEREFORE**, Plaintiff demands judgment against Defendant entities jointly and severally for compensatory, consequential, treble and punitive damages, legal fees and other professional fees expended in discovering the nature of the fraud and to enforce monies due and owing pursuant to the original license agreement and minimum net royalty fees due under said agreement.

## COUNT EIGHT
### (COMMON LAW STATE TRADEMARK INFRINGEMENT)

72. Plaintiff repeats the allegations contained in paragraphs 1 through 70 as if more fully set forth herein.

73. The aforesaid acts of Defendant entities constitute the use of a designation that is likely to cause confusion in the marketplace.

74. The aforesaid acts of Defendant entities constitute trademark infringement in violation of the common law of the State of New York as well as the several states of the United States of America.

75. The aforesaid acts have caused and are continually causing great and irreparable harm to Madden unless permanent restrain by this court this act of irreparable harm will continue

**WHEREFORE**, as a result of Defendant entities' fraud Plaintiff has been damaged and irreparably harmed therefore Plaintiff demands judgment against Defendants for compensatory and punitive damages with interests, attorneys' fees pursuant to New York General Business Law § 349(h) and 350(d), costs of

suit and recover treble damages under New York General Business Law Section 349(h) and 350(d) by reasons of act of deceptive trade practices.

## COUNT NINE
### (DECEPTIVE ACT AND PRACTICES UNDER NEW YORK LAW)

76. Plaintiff repeats the allegations contained in paragraphs 1 through 74 as if more fully set forth herein.

77. The aforesaid of acts of Defendant entities can constitute deceptive acts or practices in the conduct of business, trade or commerce or in the furnishing of services in New York State in violation of New York General Business Law § 239(h). The aforesaid acts of Defendant entities have caused and are continuing to cause great irreparable harm to Steven Madden and is permanently restrained by this court such irreparable harm will continue.

**WHEREFORE**, as a result of Defendant entities' fraud Plaintiff has been damaged and irreparably harmed therefore Plaintiff demands judgment against Defendants for compensatory and punitive damages with interests, attorneys' fees pursuant to New York General Business Law § 349(h) and 350(d), costs of suit and recover treble damages under New York General Business Law Section 349(h) and 350(d) by reasons of act of deceptive trade practices.

## COUNT TEN
### (INJURY TO BUSINESS REPUTATION UNDER NEW YORK LAW)

78. Plaintiff repeats the allegations contained in paragraphs 1 through 76 as if more fully set forth herein.

79. The aforesaid acts of Defendant entities will likely injure the business reputation of Steven Madden in violation of New York General Business Law § 360-1.

**WHEREFORE**, as a result of Defendant entities' fraud Plaintiff has been damaged and irreparably harmed therefore Plaintiff demands judgment against Defendants for compensatory and punitive damages with interests, attorneys'

fees pursuant to New York General Business Law § 349(h) and 350(d), costs of suit and recover treble damages under New York General Business Law Section 349(h) and 350(d) by reasons of act of deceptive trade practices.

## CERTIFICATION

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any Court or in any pending arbitration or administrative proceedings. Plaintiff is not currently aware of any other party that should be joined this action.

        FRIEDRICH & FRIEDRICH, LLC
        Attorneys for Plaintiff,


By:   _/s/ David B. Friedrich____
       David B. Friedrich (DF1522)
       203 Godwin Avenue
       Ridgewood, New Jersey 07450
       (201) 670-9600 – tel
       (201) 670-9650 – fax

       5 Plume Grass Way
       Westhampton, New York 11977
       (631) 961-6466 – tel